**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION – COLUMBUS, OHIO**

IN RE:  JAMES R. KING                                  CASE NO. 09-53407
       ANGELA M. KING,

              DEBTORS.          Chapter 12

SSN/TAX ID:
      xxx-xx-3972                                      Judge Charles M. Caldwell
      xxx-xx-7524

## CHAPTER 12 PLAN OF REORGANIZATION

The Debtors in this case are James R. King and Angela M. King and James R. King and Angela M. King dba Blue Jacket Dairy, LLC.  The Kings are family farmers as the same is defined by the United States Bankruptcy Code.  The debtors propose the following Chapter 12 Plan of Reorganization pursuant to 11 U.S.C.§ 1221 and other pertinent sections of the United States Bankruptcy Code.

### ARTICLE I: DEFINITIONS

1.  The "Debtor-in-Possession" or "Debtors-in-Possession" in this Chapter 12 proceeding shall be James R. King and Angela M. King and James R. King and Angela M. King dba Blue Jacket Dairy, LLC.

2.  Any reference to "Chapter 12" shall mean 11 U.S.C. Chapter 12 of the United States Bankruptcy Code.

3.  "Reorganization" shall mean this effort to reorganize the assets and debts of the Debtors pursuant to the commencement of this action by a voluntary petition under Chapter 12 of the United States Bankruptcy Code.

4.  All references to "Plan" shall refer to this Plan of Reorganization.

5.  "Confirmation of Plan" shall mean the entry by which the Court confirms the Plan of Reorganization entered by this Debtor and approved by the Court.

6.  The "effective date" shall mean the date by which the Order of Confirmation becomes final and non-appealable.

7. Any reference to "the Court" shall mean the United States Bankruptcy Court of the Southern District of Ohio, Eastern Division at Columbus, Ohio.

8. "Priority Claim" shall mean the claim of any general creditor that is entitled to priority in payment pursuant to §507 and other relevant sections of the United States Bankruptcy Code including, but not limited to, the professional fees defined herein.

9. "Professional fees" shall mean any fees or costs allowed by this Court and which are payable to a person by the Order of this Court after proper application, including attorney fees of the Debtor's attorney in accordance with 11 U.S.C. §503(b)(4) and 11 U.S.C. §330.

10. "Allowed Claim" shall be any claim which has been scheduled or filed with the Bankruptcy Court in a timely fashion and to which no objection to its allowance has been filed within the time period fixed by the Bankruptcy Court. An allowed claim shall only include claims which are properly perfected and ordered to be paid by the Court.

11. "Claim" is a right to payment whether or not such right is reduced to a judgment, whether it is liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, secured or unsecured, which right arose or accrued prior to the date of confirmation.

12. "Operating expenses" shall mean all costs associated with producing income by the Debtors as is provided in the Debtors' Chapter 12 Plan of Reorganization, including all necessary repair, replacement costs, and reasonable allowances for business expenses and future business expenses.

13. "Disposable income" means all income received by the Debtor annually after deducting from gross income all operating expenses, approved living expenses, and Chapter 12 plan payments, whether through the Trustee or paid directly.

14. "Trustee" shall mean the entity appointed to serve this case pursuant to 11 U.S.C.§1202.

## ARTICLE II – CLASSES OF CLAIMS AND INTERESTS

1. <u>Priority Claims</u>. At least two priority claims exist which shall be dealt with in this Plan. The income tax claims of the Internal Revenue Service or the State of Ohio, whether already established or whether they need to yet be established shall be treated as priority claims. It is believed that the Debtors have filed all necessary tax returns except returns which are

properly subject to an extension to file.  The Debtors shall continue to timely file tax returns throughout this Chapter 12 Plan of Reorganization and shall continue to keep tax payments current as well as addressing any previous amounts owed which shall be treated as priority claims.  Real estate tax claims may also be a priority claim, but the Debtors shall separately deal with the county treasurer of Logan County, Ohio, pursuant to options available.  These priority claims shall be dealt with in this Plan.

    2. <u>Secured Claims.</u>  All secured claims shall be dealt with in this Plan in a manner permitted and allowed by the United States Bankruptcy Code.  Secured claims shall be those which existed as of the date of the filing of this petition and which are finally allowed or approved by the Court.  Each shall receive a treatment whereby it receives payment equal to the collateral which secures the repayment of their claim.  Although each will be dealt with hereinafter, it is believed that all secured creditors will be paid in full by this Plan because it is believed that all secured creditors are fully secured.  Pursuant to this Plan, no creditor, whether secured or unsecured, shall be entitled to payment unless the creditor properly files a timely and perfected proof of claim form.

    3. <u>Unsecured claims.</u>  Unsecured claims will be paid in accordance with the United States Bankruptcy Code.  The amount of payment on unsecured claims shall be dealt with hereinafter.

    4. <u>Administrative claims.</u>  Administrative claims shall be paid as allowed by this Court.

## **ARTICLE III – HISTORY OF THE CASE**

    James R. King has been a dairy and grain farmer for 30 or more years.  From time to time he has had additional employment off the farm and may continue to have minimal off-the-farm income and earnings during the life of this Plan.  His skills include the ability to do cement/concrete work, some types of construction work, and custom farm work for others.  Angela M. King has shown income from consulting.

    Approximately two years ago, the Kings determined that the production, manufacture, and sales of cheese and cheese products might dovetail nicely with the dairy operation and might create opportunities in a niche market to produce a greater net return than the dairy operation which is subject to the whims of the market.  That business has been effectively launched and is

surpassing expectations and projections, both regarding income and net revenues.

As a result, the Kings throughout the life of this Plan will enjoy income from each of the following sources:

1. The dairy operation which has been in place for decades. Much of the dairy operation is utilized by the Kings' new cheese business. Any portion of the dairy products which are not utilized by the cheese business will be marketed and sold.

2. Grain and hay farming. Much of the hay and much of the grain is utilized for feed for the dairy operation. Any of the grain and hay which is not utilized as feed for the dairy business will be marketed and sold.

3. The cheese business which does business under the name of Blue Jacket Dairy, LLC. The Kings are the sole owners of Blue Jacket Dairy, LLC.

4. Any off-the-farm work or consulting done by either of the Kings.

The Kings also are contemplating streamlining their operations and are contemplating whether some orderly liquidation of certain of the assets would produce a more economical and efficient business plan.

We believe that the Kings are family farmers contemplated by the passage of Chapter 12 now more than two decades ago. The Kings are actively involved in their farming operation, they obtain the bulk of their income from farming operations, and their debts are essentially farm-related debts. Their total debts are less than the statutory maximum for a family farmer to obtain relief under Chapter 12 of the United States Bankruptcy Code.

We present this Plan of Reorganization pursuant to 11 U.S.C.§1221 and other pertinent sections to preserve this family farm and believe that the Plan proposed is both feasible and practical. We further believe that every creditor will be treated as well as the creditor would be treated in the event of an immediate liquidation.

## **ARTICLE IV – PRIORITY CLAIMS**

A. A priority claim seems to exist in favor of the **Internal Revenue Service**. As listed on Schedule E, claims to the Internal Revenue Service from the year 2006 in the amount of $802.00 and from the year 2007 in the amount of $9,000.00. The Kings have been making payments on this delinquency. The entire $9,802.00 or the amount properly perfected by claim shall be paid over the life of this Plan. On the other hand, the Kings have not yet filed their 2008

income tax return, although they have properly requested and received an extension. It is believed that the 2008 federal income tax return will show the inception of the new cheese business startup expenses resulting in a loss, which may then be carried back to the 2007 and which may alter the amount of tax which would otherwise be due. Neither the finished product for the 2008 income tax return nor any considerations of capital loss carryback have yet been determined. The Kings are operating under the assumption that the amount of money due and payable to the Internal Revenue Service will be paid over the life of the Plan. Payments will either be made pursuant to the present payment arrangement with the Internal Revenue Service or in a manner acceptable to the Internal Revenue Service so that the entire arrearage is reduced and retired over the life of this Plan.

B. They also show an arrearage to the **State of Ohio** in the amount of $1,849.00 which shall be paid at a minimum by paying the sum of $616.00 on or before December 31 of 2009, December 31 of 2010, and December 31 of 2011. The payment for the State of Ohio tax delinquency shall be paid through the Chapter 12 Trustee's office.

C. Presently the first half taxes for the year 2008 which were due and payable in February of 2009 have not been paid. The amount due is less than $1,000.00. They had not even been determined as of the date of the filing of this action. The **Logan County Treasurer's Office** has allowed the Kings to make this payment either in a lump sum or by establishing a payment schedule. The entire amount of arrearage will be paid during the life of this Plan and be paid directly to the Logan County Treasurer when paid.

The Internal Revenue Service, the State of Ohio, and the Logan County Treasurer shall all be paid the delinquent taxes during the life of this Plan and the payments shall not be diminished by any amount paid for trustee fees or compensation.

## ARTICLE V – SECURED CLAIMS

A. **Countrywide Home Loans, Inc.,** also referred to as Countrywide Home Loans Servicing, L.P. Countrywide is a secured creditor secured by the residential real estate of the parties located at 1434 County Road 11, Bellefontaine, Ohio 43311. The debt consists of a first mortgage. Accordingly, Countrywide has a first mortgage and a second mortgage against the real estate, which is its collateral, being 5.302 acres more or less located in Section 4 Town 3 Range 14, Harrison Township, Logan County, Ohio, and upon which is situated a residence.

The Debtors believe that Countrywide is fully secured. Accordingly, no separate appraisal of the real estate has been authorized, nor acquired. The Debtor shall deal with the Countrywide debt under this Plan, therefore, in the following manner:

      1.      We show that the first mortgage has a balance of $131,671.00. We show that the second mortgage has a balance of $48,684.00. Countrywide Home Loans Servicing, L.P. has filed a proof of claim for the second mortgage showing that they claim an amount secured of $49,369.45. We are prepared to use their number as to the second mortgage. We will use our number for the first mortgage because we have received no other correspondence from Countrywide. As a result, the total amount due to Countrywide is $181,040.45. The figure for purposes of this Plan shall include the entire amount due including principal, late fees, late charges, past due interest, and therefore becomes the new amount of the new secured claim. Pursuant to this Plan, the total sum of $181,040.45 shall be amortized over a period of 30 years at a fixed rate of interest based upon today's market shall be computed at 5.5% producing a monthly payment of $1,027.93. The first payment shall be due on or before the first day of the month following the confirmation of this Plan of Reorganization and shall continue each month thereafter for 360 months until the loan is paid in full.

      2.      Real estate taxes and insurance shall be paid as they have already been paid with this loan. If the funds were escrowed, a new escrow amount shall be determined. If the real estate taxes and insurance have not previously been escrowed, they shall be paid directly by the Debtors to the Logan County Treasurer and to the homeowners' insurance company. The property shall be insured at all times and Countrywide shall be listed as a loss payee on such insurance. The Debtors shall keep the real estate taxes current.

Countrywide shall retain its lien upon the real estate and shall have a first and best lien upon the real estate without the necessity of reperfecting or refiling any other security documentation. Except as modified herein, the terms of the note and mortgage to Countrywide on both the first mortgage and the second mortgage shall remain as is set forth in those documents.

B.  **CNH Capital.**  CNH Capital is a secured creditor whose loan is secured by items of farm equipment and machinery.  The debt to CNH Capital consists of four separate loans.  However, for the purposes of this Plan, the four loans shall be combined into one amount due and shall be amortized and repaid as a single loan.  The aggregate claim listed on the schedules was $4,373.00, but in correspondence with CNH, they have indicated that they believe that their claim is an additional $227.00 making the total amount due $4,600.00.  CNH Capital is fully secured and the entire claim of $4,600.00 will, therefore, be paid in monthly installments over the life of this Plan.

The Debtors will pay CNH Capital $4,600.00 amortized on a three-year payback at an interest rate of 8.5 percent.  The present loans range from a low interest rate of 6.9 percent to a high range exceeding 12 percent.  The blended average of 8.5 percent over three years will produce a monthly payment of $145.21.  CNH Capital shall retain its liens on collateral without the necessity of reperfecting or refiling any security documentation.  Except as modified herein, the terms and conditions stated in CNH's notes and/or security agreements shall be applicable to the loans and the treatment of the collateral for the loan after confirmation of the Debtors' Plan.

C.  **Fifth Third Bank**.  Fifth Third Bank is a secured creditor whose collateral includes the real estate mortgage on 36 acres of land located in Harrison Township, Section 27 Town 3 Range 14, which includes a house, a series of barns and other improvements, and a dairy setup.  They are also secured in inventory, chattel paper, accounts, equipment, and general intangibles.

Fifth Third Bank has three separate loans which show on the Debtors' Schedule D as a farm loan with a present payoff of approximately $179,520.00; an operating loan with a balance of approximately $27,862.00; and a separate loan for an outdoor corn furnace with a payoff of approximately $4,250.00.  Fifth Third Bank filed a foreclosure action in the Logan County Court of Common Pleas on February 17, 2009, indicating that the categorization of loans and the payoffs are approximately accurate.

The Debtors will pay the three loans of Fifth Third Bank in full by amortizing the total sum of $211,632.00, amortizing the repayment over a fifteen-year period of time at a fixed rate of 7.75 percent set forth in the larger note, which will produce a monthly payment of $1,992.04.

Fifth Third Bank shall retain its lien on its collateral without the necessity of reperfecting or refiling any security documentation. Except as modified herein, the terms stated in the Fifth Third Bank's notes, security agreements, and other documents shall be applicable to the loans and to the repayment of the loans after confirmation of the Debtors' Plan. To the extent any of those terms are changed by this Plan of Reorganization, the modification shall be effective.

The Debtors plan to continue reviewing the farming operation to determine efficiency and may do orderly liquidation by selling collateral, real estate, or the rental house located on the property which is the collateral for the loan to Fifth Third Bank. The application of such sale proceeds shall reduce the indebtedness to Fifth Third Bank in the event of such sale or liquidation as follows:

1. The rental home may be sold at any time during the life of this Plan so long as it is sold for a price of $68,000.00. Notification to Fifth Third Bank that the property is to be sold and upon the payment of the sum of $68,000.00, Fifth Third Bank shall give a release of the rental house and the amount of acreage necessary to go with the rental house (presumed to be the county minimum of one acre of land). To the extent that Kings are able to sell their rental house for a price netting in excess of $68,000.00, they may retain the excess for their farming operations.

2. Any equipment, machinery, or other chattels which are sold shall have the application of the sales proceeds to the Fifth Third Bank one hundred percent.

3. In the event farm equipment, machinery, or other chattels are approaching their useful life limitation and the Debtors have a need to trade such collateral in on new or newer equipment, normal business practices shall be involved. Such "trade-ins" shall only occur with the consent of the Fifth Third Bank and a review will be made as to whether or not such upgrading of equipment will require new financing. The lien position of Fifth Third Bank will not be affected by any such transaction.

4. In the event the Kings choose to sell real estate because it is not necessary for the farming operation which is subject to the mortgage of the Fifth

Third Bank, Fifth Third Bank shall give a release as to the sale of any such real estate upon the payment to the Fifth Third Bank of $4,000.00 per acre. In the event the Kings are able to obtain a price greater than $4,000.00 per acre, $4,000.00 per acre shall be paid to Fifth Third Bank and any balance may be retained by the Kings for their farming operation.

The original real estate mortgage and original larger debt is a 15-year amortization and at a fixed rate of 7.75 percent. As a result, this treatment of this secured creditor shall keep them fully secured, shall pay them in full, and shall give them the essential benefit of the original bargain and contractual obligations with the Kings.

D.    **National City Bank**. National City Bank has two secured loans. The first is a vehicle loan on a 2005 Dodge Grand Caravan. This vehicle is in good condition and is fully operational, and the Debtors wish to retain the vehicle. Upon the recent Motion for Relief of Stay filed by National City Bank, the current payoff balance is $5,847.00. The debt is fully secured, and the Kings shall pay the vehicle off in full by amortizing the $5,847.00 for three years at an interest rate of 8 percent. As a result, the monthly payment of $183.22 shall be paid for 36 months with a payment to be made on or before July 10, 2009, and each month thereafter until paid in full.

The second debt to National City Bank is a business loan relating to the Blue Jacket Dairy cheese business. The debt to National City Bank was taken out in November of 2007 in the original amount of $105,000.00 and has been paid down to $86,574.00. The Debtors propose to repay the indebtedness to National City Bank over a 12-year amortization at an interest rate of 8.7 percent (the original note rate of interest) fixed rate over the life of the term, and shall make the payments in monthly installments in the amount of $970.67.

The creditor, National City Bank, as to each loan shall retain its lien on its collateral without the necessity of reperfecting or refiling any security documentation. The terms stated in the original notes, security agreements, and other documents shall be applicable to the loan and repayment schedule in this Plan of Reorganization except as modified herein.

## ARTICLE VI – UNSECURED CLAIMS

The Debtor has 19 unsecured claims totaling $193,648.00. It is uncertain which of these unsecured creditors will perfect their claims by filing a proof of claim on or before the deadline

Case 2:09-bk-53407   Doc 29   Filed 06/29/09   Entered 06/29/09 16:49:22   Desc Main
Document      Page 10 of 14

date. The Debtors propose to pay a dividend or make payment to these unsecured creditors of eight percent (8%). The payment shall be made to the Chapter 12 Trustee on or before December 15 of each year of the Plan, including a first payment to be made on or before December 15 of 2009. The final obligation shall be 8 percent of all perfected unsecured claims. In the event, all unsecured creditors properly file a proof of claim, it is anticipated that the 8 percent will produce approximately $16,000.00 to be paid to unsecured creditors over the life of this Plan. And in that case, one-third of the amount would be paid each year. Again, the actual payment shall be determined after the deadline has come for the perfecting of claims. The Debtors shall pay eight percent (8%) of that perfected amount in equal installments on or before December 15 of each year of this Plan. All unsecured payments shall be paid to and through the Chapter 12 Trustee's office.

Upon receipt by the Chapter 12 Trustee of the annual unsecured payment, the Trustee shall first subtract from the gross amount the Trustee fee or compensation as set by the annual compensation order of the United States Attorney General and shall then distribute the balance on a pro rata basis to the unsecured creditors who have perfected their claim.

### ARTICLE VII – PAYMENTS TO AND THROUGH THE CHAPTER 12 TRUSTEE

On an annual basis, all payments for the unsecured creditors shall be made to the Chapter 12 Trustee. Any tax payments due to the State of Ohio shall be payable through the Chapter 12 Trustee's office on a yearly basis. The monthly payments to CNH Capital shall be paid through the Chapter 12 Trustee's office. The real estate secured debt through Fifth Third Bank and upon the parties' residence to Countrywide shall be paid directly to those creditors.

### ARTICLE VIII – DISPOSABLE INCOME

The Debtors shall prepare and present to the Chapter 12 Trustee on an annual basis a Disposable Income Report showing whether pursuant to the provisions of Chapter 12 additional disposable income payments are due. Upon preparation and filing of the Disposable Income Report each of the three years, and upon payment of the amount the Disposable Income Report shows is due, the statutory provisions relating to disposable income shall be met.

### ARTICLE IX – LIQUIDATION ANALYSIS

A liquidation analysis shows that a creditor, whether secured, unsecured, or priority, is receiving under the terms of this Plan an amount equal to the amount it would receive in the

event of a liquidation. The liquidation analysis takes into account the costs of liquidation and the prevailing market conditions.

## ARTICLE X – LIEN RETENTION

As is set forth in other places in this Plan of Reorganization, each secured creditor shall retain its lien, its priority, and its collateral protection and perfection without the necessity or refiling or reperfecting such security interest. This shall be true for the life of the three-year Plan of Reorganization and extends beyond the three years.

## ARTICLE XI – LENGTH OF PLAN

In accordance with 11 U.S.C.§1222(C), this Plan shall be for a period of three years.

## ARTICLE XII – ADEQUATE PROTECTION

Based upon the fact that the Debtors are paying all secured creditors in full and is paying the unsecured creditors in an amount equal to the amount they would receive in a liquidation, the Debtors will not be providing any separate adequate protection payments.

## ARTICLE XIII – DEFAULTS AND THE CURING OF DEFAULTS

All defaults or arrearages previously existing within any creditors' classifications shall be treated as cured upon and under the terms of this Plan if the Plan is confirmed, completed, and a discharge is received.

## ARTICLE XIV – JURISDICTION OF THE COURT

The Court will retain jurisdiction until this Plan has been fully consummated for at least the following purposes:

1. The classification of the claims of any creditors and the re-examination of the claims which have been allowed for the purposes set forth in Chapter 12 of the United States Bankruptcy Code.

2. To determine any and all questions and disputes regarding title to assets or any causes of actions, controversies, disputes, or conflicts relating to such assets.

3. To correct any defect, to cure any omission, or to reconcile any inconsistencies in this Plan or in the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan.

4. To consider any modifications of the Plan after confirmation pursuant to bankruptcy rules or the United States Bankruptcy Code.

5. To enforce and interpret the terms and conditions of this Plan.

6. To conclude this Plan by the entry of an Order which terminates the case and grants the Debtor a discharge.

## **ARTICLE XV – FINAL ARTICLE**

At the conclusion of this three-year Plan, each unsecured creditor shall be deemed paid in full and the Debtors shall receive a discharge of the debt to such unsecured creditors upon completion of this Plan. The secured creditors will be paid their collateral perfection beyond the life of this Plan and the payments which extend beyond this Plan shall continue in accordance with the terms of this Plan. No payments shall be payable to the Chapter 12 Trustee at the end of the three-year Plan of Reorganization.

Respectfully submitted,

/s/ Steven R. Fansler
Steven R. Fansler (#0000644)
212 N. Detroit Street
P. O. Box 764
West Liberty, Ohio 43357
Phone: (937) 465-5056
Fax: (937) 465-9880
E-mail: sfanslerlaw@ctcn.net
Attorney for Debtors James R. and Angela M. King

APPROVED:

/s/ James R. King
James R. King

/s/ Angela M. King
Angela M. King

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 29, 2009, a copy of the foregoing "Chapter 12 Plan of Reorganization" was served on the following registered ECF participants electronically through the court's ECF system at the email addresses registered with the Court:

Asst. U. S. Trustee (Col) @ ustpregion09.cb.ecf@usdoj.gov
Patricia L. Hill on behalf of Fifth Third Bank @ notices@statmanharris.com and plhill@statmanharris.com
Frank M. Pees, Chapter 12 Trustee @ trustee@ch13.org

And by regular U. S. Mail upon the following:

Beth Ann Schenz
Weltman, Weinberg & Reis
323 W. Lakeside Ave., Ste. 200
Cleveland, Ohio 44113
*Attorney for National City Bank*

Countrywide Home Loans Servicing, LP
c/o McCalla Raymer, LLC
Bankruptcy Department
P. O. Box 105364
Atlanta, GA 30348

Aaron R. Bixby
1309 Technology Parkway
P. O. Box 668
Cedar Falls, IA 50613
*Attorney for Rabo Agrifinance, Inc.*

CNH Capital
P. O. Box 3600
Lancaster, PA 17604

Logan County Treasurer
100 South Madriver Street
Bellefontaine, OH 43311

Internal Revenue Service
P. O. Box 21126
Philadelphia, PA 19114

State of Ohio
P. O. Box 182402
Columbus, OH 43218-2402

Advanced Agri-Solutions
601 Logan Street
Wapakoneta, OH 45895

ADVANTA Businesscard
P. O. Box 8088
Philadelphia, PA 19101

Agrigold Hybrids
R.R. 1, Box 203
St. Francisville, IL 62460

Chase Bank USA
c/o Weinstein and Riley, PS
2001 Western Ave., Ste. 400
Seattle, WA 98121

Citi Card
Box 6500
Sioux Falls, SD 57117

Chase Bank USA, N.A.
c/o Creditors Bankruptcy Service
P. O. Box 740933
Dallas, TX 75374

Elder-Beerman Retail Services
P. O. Box 15521
Wilmington, DE 19850-5521

Kohl's
P. O. Box 3043
Milwaukee, WI 53201

Lowe's
P. O. Box 981064
El Paso, TX 79998

Seed Consultants
648 Miami Trace
P. O. Box 370
Washington Courthouse, OH 43160

Mary Rutan Hospital
205 Palmer Ave.
Bellefontaine, Ohio 43311

Farm Plan
P. O. Box 5328
Madison, WI 53705

Logan View Financial
110 Dowell Avenue
Bellefontaine, Ohio 43311

Department Stores National Bank/Macys
Tsys Debt Mgmt., Inc.
P. O. Box 137
Columbus, GA 31902-0137

　

_/s/  Steven R. Fansler_____
Steven R. Fansler (#0000644)
212 N. Detroit Street
P. O. Box 764
West Liberty, Ohio 43357
Phone: (937) 465-5056
Fax:  (937) 465-9880
E-mail: sfanslerlaw@ctcn.net
Attorney for Debtors James R. and Angela M. King

-14-
###